## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON HAGGERTY, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>BLUETRITON BRANDS, INC. AND NIAGARA BOTTLING, LLC,<br><br>     Defendants. | Case No. 3:21-cv-13904-ZNQ-DEA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sharon Haggerty ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge, against Defendants Bluetriton Brands, Inc. ("Bluetriton"), and Niagara Bottling, LLC ("Niagara") (collectively "Defendants").

## NATURE OF THE ACTION

1. This is a class action lawsuit regarding Defendants' manufacturing, distribution, marketing and sale of Defendants' bottled water Products labeled as "100% Recyclable" on behalf of a class of purchasers of the Products[1] in the State of New Jersey.  While Bluetriton and Niagara manufacture bottled water Products under different brand names, each water bottle Product at issue in this litigation contains the representation "100% Recyclable" on each Product's packaging and labeling.  To the extent Defendants are referred to collectively, it is because they make identical misleading or fraudulent claims on the product packaging and

---

[1] The following brands of bottled water are referred to herein as the "Products": Arrowhead, Poland Spring, Ozarka, Deer Park, Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Market Essentials.

labeling.  For the reasons discussed herein, both Bluetriton and Niagara's representations on their individual Products' packaging is false and misleading because the individual bottles and their component parts are not "100% Recyclable."  The Products are not 100% recyclable because the bottle caps are either not accepted for recycling pickup in New Jersey, or not processed, and only a small percentage of the plastic that is accepted is actually recycled into reusable material. Therefore, the Products are not "100% Recyclable."  As such, environmentally-conscious consumers such as Plaintiff Haggerty and members of the Class end up paying a premium price for the Products because of their representation on the packaging and labeling that the Products are "100% Recyclable."

2.    Recycling is "the process of collecting and processing materials that would otherwise be thrown away as trash and turning them into new products."[2]

3.    Similarly, under the New Jersey Recycling Act, N.J.S.A. 13:1E-99.11, "'[R]ecycling' means any process by which materials which would otherwise become solid waste are collected, separated or processed **and returned to the economic mainstream in the form of raw materials or products**."  N.J.S.A. § 13:1E-99.12 (emphasis added).

4.    Plastic waste is an increasingly dire international problem.  Nearly 90% of plastic waste is not recycled.  Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[3]  As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

---

[2] United States Environmental Protection Agency, *Recycling Basics*, https://www.epa.gov/recycle/recycling-basics (last accessed July 14, 2021).
[3] Nick Young, How does plastic end up the ocean?, https://www.greenpeace.org/aotearoa/story/how-does-plastic-end-up-in-the-ocean/ (last accessed July 15, 2021).

5.      Recognizing consumer concerns regarding plastic pollution and excessive plastic waste generation, many corporations are making commitments to make their products recyclable, reusable, or compostable.[4]  In fact, in 2019, the American Beverage Association launched the "Every Bottle Back" Initiative, which claims to have "carefully design[ed] [] plastic bottles to be 100% recyclable, including the caps."[5]

6.      However, despite their labeling to the contrary, the plastic bottles sold by Defendants are not "100% Recyclable" because: (1) the propropylene ("PP") bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles are not recyclable and cannot be processed into usable material; (2) at least 28% of the polyethylene terephthalate ("PET") bottles[6] and high-density polyethylene ("HDPE") bottle caps[7] sent to recycling centers are lost in processing or are contaminated and thus end up in landfills or are burned; and (3) domestic recycling facilities only have the capacity to process approximately 22.5% of the PET and HDPE consumed in the United States.

7.      New Jersey is no exception.  Take for example Ms. Haggerty's home county of Warren County, New Jersey.  As explained in Warren County's Recycling Guide, the only items accepted are the plastic containers.[8]  The caps and labels of the bottle are not accepted.  As such, Defendants' Products are not "100% Recyclable" because the caps and labels are not accepted.

---

[4] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.

[5] American Beverage Association, https://www.innovationnaturally.org/every-bottle-back/ (last accessed July 14, 2021).

[6] BlueTriton Brands Inc., https://www.nestle-watersna.com/who-we-are/key-facts-and-figures/nestle-waters-north-america-facts, ("The bottles made out of polyethylene terephthalate (PET), and recycled PET (rPET), [are] never meant to be thrown away. They [are] designed to be captured, recycled, and reused again and again.") (last accessed July 16, 2021).

[7] Niagara Bottling Co., https://www.niagarawater.com/faq/ ("All of our bottles are produced using PET (polyethylene terephthalate) plastic and High-Density polyethylene (HDPE) caps.") (last accessed July 16, 2021).

[8] The Recycling Guide is attached hereto as **Exhibit A**.

In fact, the Recycling Guide instructs residents to "[d]ispose lids in trash."[9]  Therefore, contrary to Defendants' assertions on the Products' packaging and labeling, "the components of the bottles are not returned to the economic mainstream in the form of raw materials or products." N.J.S.A. § 13:1E-99.12.

8.      Such recycling limitations are not unique to Warren County, they are state-wide challenges due to "[t]he collapse of the recycling market – not just here in New Jersey, but across the country – [] triggered by the collapse of markets in China and elsewhere in Asia to accept recycled materials."[10]  In fact, "New Jersey recycles about 44 percent of the municipal waste collected at curbside."[11]  In light of these figures, Defendants' Products are clearly not "100% Recyclable" even if they are collected because less than half of the material collected is actually returned to the economic mainstream in the form of raw materials or products.  N.J.S.A. § 13:1E-99.12.  More generally, "[s]ince 1990 recycling has dropped dramatically in New Jersey."[12]  "In the early 1990's [New Jersey] recycled over 50% of municipal and household waste and now [New Jersey is] only recycling 37.1% and some counties like Hunterdon are down to 27%. New Jersey's plastic waste problem has also become an environmental and public health issue too[.]"[13]

9.      Jeff Tittel, Director of the New Jersey Sierra Club, explained:  "Every year we pick up 6 million pounds of cans and bottles and other floatables along our roadways. Litter is a major source of pollution for our rivers and bays but increasing incinerator use is not a viable

---

[9] *Id.*

[10] Tom Johnson, *Amid Crisis, Lawmakers Take Fresh Look At NJ's Recycling Sysrem*, NJ Spotlight News, August 16, 2019.  A copy of the article is attached hereto as **Exhibit B**.

[11] *Id.*

[12] Insider NJ, *NJ Needs to Put More Into Its Recycling Efforts*, December 20, 2019, https://www.insidernj.com/press-release/nj-needs-put-recycling-efforts/#:~:text=Since%201990%20recycling%20has%20dropped,Hunterdon%20are%20down%20to%2027%25. (last visited 10/12/21).

[13] *Id.*

way to address our waste stream."[14] In light of these New Jersey specific figures, Defendants' Products are not "100% Recyclable."

10.    Defendants' marketing of their Products as "100% Recyclable" also violates the Federal Trade Commission Green Guides.  *See* 16 C.F.R. § 260.12.  Because the Products' cap is not recyclable, it cannot be "collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12.

11.    Further, the Green Guides make clear that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers."  16 C.F.R. § 260.12.  Each Defendant is and was obligated to qualify their recyclable claims because portions of the Products, most notably the caps, are not recyclable, *see* 16 C.F.R. § 260.12 ("For items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable."); 16 C.F.R. § 260.12 ("If any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive."), and because in New Jersey more than half of the municipal waste collected at curbside is ultimately not recycled.

12.    Thus, only some PET and HDPE plastic bottles and jugs can be legitimately labeled as recyclable in the U.S. today.[15] As a result, the Products are not "100 % Recyclable" as Defendants claim.

13.    Defendants know that components of the Products (i.e. the caps) are not

---

[14] *Id.*
[15] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.

recyclable and that the Products typically end up in landfills or incinerated and are unsuitable for recycling. Thus, Defendants' representations that the Products are "100% Recyclable" are material, false, misleading and likely to deceive members of the public.

14.    In representing that the Products are "100% Recyclable," Defendants violated the New Jersey Consumer Fraud Act ("NJCFA") by engaging in affirmative acts and omissions which were misleading and stand outside the norm of reasonable business practice in that Defendants' practices will victimize the average consumer. Had Defendants not misrepresented that the Products were "100% Recyclable," and/or failed to omit material facts regarding the recyclability of the Products, Plaintiff would not have paid the same amount for the Products. Stated another way, Plaintiff paid a premium price for the Products as a result of Defendants' affirmative acts and/or omissions in an amount to be determined at trial. A reasonable consumer viewing Defendants' representations on the Products would expect that each component of the Product would be "100% Recyclable" (including caps and component parts) and that at least the vast majority of the Products would ultimately be recycled and re-used. But that is not the case, as set forth at length herein. As such, Defendants' representations were and are materially misleading to the average consumer.

15.    Plaintiff asserts claims on behalf of herself and a class of all persons in the State of New Jersey who purchased the Products for violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, fraud, negligent misrepresentation, breach of express warranty, and unjust enrichment.

## PARTIES

16.    Plaintiff Sharon Haggerty is a resident of Washington, New Jersey. Ms. Haggerty has purchased numerous multi-bottle packs of Defendant Bluetriton's Deer Park bottled water

and Defendant Niagara's Niagara bottled water for approximately $5 for Deer Park and $4 for Niagara. Ms. Haggerty made these purchases in-store at Shoprite stores in Phillipsburg, Washington, and Hackettstown, New Jersey. When purchasing the Products, Ms. Haggerty reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendants that the Products were, in fact, "100% Recyclable." Ms. Haggerty relied on these representations to her detriment in deciding to purchase the Products manufactured by Defendants in that she would not have purchased the Products from Defendants on the same terms if she had known that they were not, in fact, "100% Recyclable." These representations and warranties were part of the basis of the bargain. Ms. Haggerty reasonably believed, based on Defendants' representations, that the entirety of the bottle (including the cap and label) was recyclable when disposed of in a recycling bin. Ms. Haggerty in fact attempted to recycle the bottles she purchased by placing them in her recycling bin for pickup. For the reasons discussed herein, the bottles Plaintiff purchased were not actually recycled because the bottle cap is not recyclable in her county and because given statewide statistics, less than half of the bottles Ms. Haggerty recycled would have actually been recycled into reusable material. Ms. Haggerty paid a premium price for the Products quantified as the difference in value between the Products as represented versus the value of the Products received (the value of the Products received was less than the value if the Products were, in fact, "100% Recyclable"). Plaintiff also understood that in making the sale, ShopRite was acting with the knowledge and approval of BlueTriton and Niagara and/or as the agent of BlueTriton and Niagara. Plaintiff also understood that each purchase involved a direct transaction between herself and BlueTriton and Niagara, because the Products she purchased came with labeling and packaging prepared by BlueTriton and Niagara, including representations that the Products were "100% Recyclable." Because of

the aforementioned facts, Plaintiff will be unable to rely on Defendants' "100% Recyclable" claim in the future unless appropriate injunctive relief is entered.  Plaintiff desires to purchase water bottles from Defendants that are, in fact, 100% recyclable, but cannot rely on Defendants' representations regarding recyclability.  As such, Plaintiff is likely to suffer future harm absent injunctive relief compelling Defendants to ensure their Products are 100% recyclable or compelling Defendants to remove such misleading representations from the packaging so that Plaintiff may properly value the Products.

17.    Defendant BlueTriton Brands, Inc. ("BlueTriton") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Stamford, Connecticut.  BlueTriton Brands, Inc. is the successor entity to Nestle Waters North America, Inc.  Defendant BlueTriton Brands, Inc. manufactures, markets, and sells beverages, including bottled water, in the United States under several brand names, including Arrowhead, Poland Spring, Ozarka, and Deer Park.

18.    Defendant Niagara Bottling, LLC ("Niagara") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ontario, California.  Defendant Niagara manufactures, markets, and sells beverages, including bottled water, in the United States under several brand names, including Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds

$5,000,000 exclusive of interest and costs.

20.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New Jersey, such that Defendants have significant, continuous, and pervasive contracts with the State of New Jersey, and because Plaintiff purchased the Products in New Jersey.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants transact significant business within this District and because Plaintiff purchased and used the Products in this District.

## FACTS COMMON TO ALL CLAIMS

22.     The United States is grappling with two major plastic waste problems: plastic pollution and the generation of excessive plastic waste that is disposed of in landfills or incinerated with significant carbon emissions.

23.     The sheer amount of plastic waste accumulating in the environment is accompanied by an array of negative side effects.  For example, plastic debris is frequently ingested by marine animals and other wildlife, which can be both injurious and poisonous. Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can leach harmful chemicals into ground water that is absorbed by humans and other animals. Plastic litter on the streets and in and around parks and beaches also degrades the quality of life for residents and visitors.  As a result, consumers actively seek out products that are compostable, recyclable, or reusable to prevent the increase in global waste and to minimize their environmental footprints.

24.     Historically, recycling facilities in the United States shipped plastic scrap to China for recycling.  But tons of that shipped plastic waste was never recycled.  Instead, it was burned

or entered into waterways, where it was carried into the ocean.[16]  Despite this, due to low-cost shipping and labor, the United States became reliant on China to accept plastic materials collected by U.S. municipal systems.[17]

25.      However, in 2018, China implemented a new scrap-import policy, restricting imports of plastic waste and other materials from other countries, including the United States. This had a significant and overwhelming effect on the U.S.'s limited municipal recycling collections systems, commonly referred to as municipal recycling facilities ("MRFs").[18]

26.      MRFs collect recyclable waste, often through curbside pickup.  The recyclable waste is then sorted and sold to facilities that sort and process the material into clear flake material that can be sold and used to make new plastic items.

27.      Due to China's scrap-import policy, MRFs, including those in New Jersey, had to make numerous changes to municipal recycling programs, with many deciding to longer accept certain plastics, and employing tighter quality standards.[19]  Thus, as a result of these market conditions, many cities and counties around the country are no longer recycling many types of plastic dropped into recycling bins.  Instead, many types of plastic are being landfilled, burned, or stockpiled.[20] Acceptance by an MRF is therefore not proof that a product will be recycled.

28.      Each of the Products manufactured by Defendants have three basic plastic components: the bottle, the bottle cap, and the label that is wrapped around the bottle.  The

---

[16] Christopher Joyce, *Where Will Your Plastic Trash Go Now that China Doesn't Want it?*, www.NPR.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it (last accessed July 16, 2021).
[17] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 6.
[18] *Id.*
[19] WasteDive, *How Recycling Has Changed In All 50 States*, https://www.wastedive.com/news/what-chinese-import-policies-mean-for-all-50-states/510751/ (last accessed July 16, 2021).
[20] The Guardian, *Americans' Plastic Recycling is Dumped in Landfills, Investigation Shows*, https://www.theguardian.com/us-news/2019/jun/21/us-plastic-recycling-landfills (last accessed July 16, 2021).

bottles are made of polyethylene terephthalate (PET, #1 plastic), the plastic most commonly used in single-use plastic water bottles.[21]  The Products' bottle caps are made of polypropylene (PP, #5 plastic) or high-density polyethylene (HDPE, #2 plastic).  Finally, the Products' labels are made from biaxially oriented polypropylene (BOPP), a form of PP.

      29.     Throughout the class period, Defendants have consistently marketed on the Products' packages that they are "100% Recyclable":



[21] PathWater, *PET, the "Safe" Plastic*, https://drinkpathwater.com/blogs/news/is-pet-plastic-bpa-free#:~:text=PET%20plastic%20(polyethylene%20terephthalate)%20is,and%20inability%20to%20process%20stress (last accessed July 16, 2021).










30.    Greenpeace USA, a non-profit environmental organization, recently conducted a comprehensive survey of plastic product waste recycling and reprocessing in the United States in order to determine the legitimacy of "recyclable" claims on labels for consumer plastic products.

31.    It is true that PET and HDPE are widely considered to be the "most recyclable" forms of plastic.  However, Greenpeace's survey found that as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated.[22]

32.    Moreover, due to contamination and processing losses, about a third of the collected PET and HDPE material processed by MRFs cannot be converted into "clean flake," and is instead, landfilled and incinerated.[23]  Thus, the Products' PET bottles and HDPE bottle caps are not "100% Recyclable" as claimed by Defendants.

33.    Furthermore, PP and BOPP plastics, the materials used to make the Products' bottle caps and film labels, respectively, are widely considered to be among the *least* recyclable plastics.[24] [25]  Thus, acceptance by an MRF of PP and BOPP plastics is not proof that the

---

[22] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 10.

[23] Jan Dell, Plastic Pollution Coalition, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*, https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (Last accessed July 16, 2021).

[24] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 22.

[25] Fast Company, *Evian's New 100% Recycled Plastic Bottle Comes Without a Label*, https://www.fastcompany.com/90524283/evians-new-100-recycled-plastic-bottle-comes-without-a-label ("Labels [] are made from a different type of plastic than the PET used in bottles. At recycling facilities, bottles are separated from labels and from caps, which are made from a third type of plastic. While labels are technically recyclable, some facilities don't have the infrastructure to handle it; others don't bother.") (Last accessed July 16, 2021).

materials will actually be recycled into a new product.[26]  Instead, the majority of PP and BOPP sent to recycling facilities incinerated or sent to landfills.  Accordingly, the Products' caps and labels are not "100% Recyclable."

34.     The nationwide recycling issues discussed herein are also particularly acute in New Jersey.  Take for example Ms. Haggerty's home county of Warren County, New Jersey.  As explained in Warren County's Recycling Guide, the only items accepted are the plastic containers.[27]  The caps of the bottle as well as the label and packaging are not accepted.  As such, Defendants' Products are not "100% Recyclable" because the caps and labels are not accepted.  In fact, the Recycling Guide instructs residents to "[d]ispose lids in trash."[28]  Therefore, contrary to Defendants' assertions on the Products' packaging and labeling, the components of the bottles are not returned to the economic mainstream in the form of raw materials or products.  N.J.S.A. § 13:1E-99.12.

35.     Such recycling limitations are not unique to Warren County, they are state-wide challenges due to "[t]he collapse of the recycling market – not just here in New Jersey, but across the country – [] triggered by the collapse of markets in China and elsewhere in Asia to accept recycled materials."[29]  In fact, corresponding to the national figures, "New Jersey recycles about 44 percent of the municipal waste collected at curbside."[30]  In light of these figures, Defendants' Products are clearly not "100% Recyclable" even if they are collected, because less than half of the material collected is actually returned to the economic mainstream in the form of raw

---

[26] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (*Last accessed July 16, 2021), at page 10.
[27] *See* **Exhibit A**.
[28] *Id.*
[29] Tom Johnson, *Amid Crisis, Lawmakers Take Fresh Look At NJ's Recycling Sysrem*, NJ Spotlight News, August 16, 2019.  *See* **Exhibit B**.
[30] *Id.*

materials or products.  N.J.S.A. § 13:1E-99.12.  More generally, "[s]ince 1990 recycling has dropped dramatically in New Jersey."[31]  "In the early 1990's [New Jersey] recycled over 50% of municipal and household waste and now [New Jersey is] only recycling 37.1% and some counties like Hunterdon are down to 27%. New Jersey's plastic waste problem has also become an environmental and public health issue too[.]"[32]

36.    Jeff Tittel, Director of the New Jersey Sierra Club, explained:  "Every year we pick up 6 million pounds of cans and bottles and other floatables along our roadways. Litter is a major source of pollution for our rivers and bays but increasing incinerator use is not a viable way to address our waste stream."[33]

37.    Pursuant to the Guides for use of Environmental Marketing Claims published the Federal Trade Commission ("FTC") (the "Green Guides"), "[it]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).

38.    Thus, "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers."  16 C.F.R. § 260.12(b).

39.    The Green Guides are clear: "if any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable

---

[31] Insider NJ, *NJ Needs to Put More Into Its Recycling Efforts*, December 20, 2019,
https://www.insidernj.com/press-release/nj-needs-put-recycling-
efforts/#:~:text=Since%201990%20recycling%20has%20dropped,Hunterdon%20are%20down%20to%2027%25.
(last visited 10/12/21).
[32] *Id.*
[33] *Id.*

material, but because of fits shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable."  16 C.F.R. § 260.12(d).

40.    In promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product *will be converted into, or used in, another product or package*. *See* 63 Fed. Reg. 84 11 24247 (May 1, 1998) (emphasis added).  As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id*., at 24243.

41.    In short, Defendants' Products are not 100% Recyclable because the plastic cap components of the bottle are not 100% recyclable, including in Warren County.  Further, given New Jersey's low recycling rates, it is clear the Products are not 100% recyclable.

42.    Seeking to take advantage of consumer's concerns, Defendants market and sell bottled water as "100% Recyclable," when the bottles cannot, in fact, be recycled as packaged.

43.    This Complaint therefore seeks to remedy Defendants' deceptive and misleading business practices with respect to the advertising, marketing and sales of the Products as "100% recyclable," when, in fact, they are not.

**44.**    Plaintiff purchased the Products referenced in Paragraph 16, above, in reliance on Defendants' false representations on the labels of the Products that the Products are "100% Recyclable."  If Plaintiff had known that the Products were not 100% recyclable, Plaintiff would not have purchased the Products on the same terms.

## <u>CLASS ALLEGATIONS</u>

45.    Plaintiff seeks to represent a class defined as all persons in the State of New Jersey who purchased the Products (the "Class").  Excluded from the Class are governmental

entities, Defendants, Defendants' affiliates, parents, subsidiaries, employees, officers, directors, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

47.     **Numerosity.**  The members of the Class are geographically dispersed throughout the State of New Jersey and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendants and/or third-party retailers and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

48.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

(a)  Whether Defendants' Products are "100% Recyclable;"

(b)  Whether Defendants misleadingly and/or deceptively represented that the Products are "100% Recyclable" and/or failed to inform class members that the Products are not "100% Recyclable";

(c)  Whether Defendants' labeling, marketing, and promotion of the Products is false

and misleading;

(d) Whether Defendants' conduct was fraudulent and/or amounts to negligent misrepresentation; and,

(e) Whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

49.    **Typicality.**  The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

50.    **Adequacy of Representation.**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

51.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues

in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq. (on behalf of Plaintiff and the Class)**

52.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

53.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

54.     Plaintiff and Class members have suffered an injury in fact and lost money or property as a result of Defendants' violations of New Jersey's Consumer Fraud Act ("NJCFA").

55.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise …." N.J. Stat. Ann. § 56:8-2.

56.     Defendants affirmatively misrepresented the Products as "100% Recyclable", when in fact the Products are not 100% recyclable.

57.     Defendants engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Products in the course of Defendant's business.  Specifically, Defendants represented that the Products are "100% Recyclable," when in fact they are not.  Had Defendants not engaged in these misleading, deceptive and false statements, Plaintiff and Class members would not have purchased the Products on the same terms and would have paid substantially less for the Products.

58.    Defendants' representation that the Products are "100% Recyclable" has the capacity to mislead the average consumer because the average consumer would expect the bottles they are purchasing, or at least the vast majority of the bottles, would in fact be recycled. At minimum, a reasonable consumer would expect that each component of the bottle would be recyclable.  But that is not the case.  Based on New Jersey specific statistics, less than half of the bottles at issue are actually recycled, and certain components are less recyclable, or not recyclable at all in some cases as it relates to the caps and/or labels.  By representing the Products as "100% Recyclable," Defendants not only misled Plaintiff but also misled a significant portion of the general consuming public and/or of targeted consumers acting reasonably under the circumstances.

59.    Defendants also knowingly concealed, suppressed, and omitted material facts about the recyclability of the Products.  Specifically, Defendants knew, or reasonably should have known, that the Products were not 100% recyclable.  However, Defendants failed to disclose this material fact to Plaintiff and the Class members at the time of purchase.  Had Plaintiff and Class members known these material facts, they would have been aware that the Products were not 100% recyclable and would not have paid a premium price for the Products.

60.    The Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' affirmative misrepresentations and/or knowing failure to disclose material information in that Plaintiff and Class members would not have purchased the Products on the same terms had they known the truth about the Products. Specifically, Plaintiff and Class members were damaged by the difference in value of the Products as represented versus the value of the Products received.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for

comparable water bottle products sold without the "100% Recyclable" representation, or through contingent variation study, or through other means regularly employed by economic and valuation experts.

61.     Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and Class Members seek an order enjoining Defendants' unfair and deceptive acts and practices and awarding damages, trebled damages, attorneys' fees and costs of suit, and any other just and proper relief available under the NJCFA.

62.     In accordance with N.J. Stat. Ann. § 56:8-20, a copy of this complaint will be sent to the Attorney General within ten (10) days of filing the same.

## COUNT II
### Fraud (on behalf of Plaintiff and the Class)

63.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

64.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendants.

65.     As discussed above, Defendants misrepresented on the Products' labeling that the Products are "100% Recyclable," when in fact they are not.

66.     Defendants also engaged in material omissions because they knew, or reasonably should have known, that the Products were not, in fact, 100% recyclable.

67.     The false and misleading representations and omissions were made with knowledge of their falsehood.  Nonetheless, Defendants continue to sell their non-recyclable Products to unsuspecting consumers.

68.     The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the proposed Class reasonably and justifiably

relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Products.

69.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the proposed Class because Plaintiff and Class members would not have purchased the Products on the same terms if they had known the truth about the Products.  Stated another way, Plaintiff and Class members paid a price premium for the Products.

70.     Plaintiff and Class members are entitled to damages, punitive damages, and other legal and equitable relief as a result of Defendants' conduct.

## COUNT III
### Negligent Misrepresentation (on behalf of Plaintiff and the Class)

71.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendants.

73.     In representing that the Products were "100% Recyclable," Defendants negligently provided false information to Plaintiff and Class members because the Products were not, in fact, "100% Recyclable."

74.     Plaintiff and Class members were reasonably foreseeable recipients of the false information promulgated by Defendants because Plaintiff and Class members were the intended purchasers of the Products.  Defendants' labels were designed to advertise the Products to consumers like Plaintiff and Class members.

75.     Plaintiff and Class members justifiably relied on the false information promulgated by Defendants because they reasonably believed that the Products were, in fact, "100% Recyclable", and purchased the Products based on that representation.  Had Plaintiff and

Class members known the truth about the Products, they would not have purchased the Products on the same terms.

76.    The damages asserted by Plaintiff and Class members were proximately caused by the false statements because Plaintiff and Class members reviewed the Products' labeling and representations, specifically the 100% recyclable claim, and chose to purchase the Products based on those false representations.

77.    Plaintiff and Class members are entitled to damages and other legal and equitable relief as a result of Defendants' conduct.

## COUNT IV
### Breach of Express Warranty (on behalf of Plaintiff and the Class)

78.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

79.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendants.

80.    In representing that the Products are/were "100% Recyclable," Defendants negligently provided false information to Plaintiff and Class members because the Products were not, in fact, 100% Recyclable.

81.    On October 17, 2021, Plaintiff provided Defendants with timely notice of this claim by letter that complied in all respects with U.C.C. § 2-607(3)(a). *See* **Exhibit C**.

82.    Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Products were "100% Recyclable" when in fact the Products were not, in fact, "100% Recyclable."

83.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and members of the New York Subclass were damaged because they paid a price premium

for the Products based on the materially misleading representation that the Products were "100%
Recyclable," when in fact they are not.

84.    As a result of Defendants' conduct, Plaintiff and members of the Class are entitled
to damages, as well as any other appropriate relief.

### COUNT V
**Unjust Enrichment (on behalf of Plaintiff and the Class)**

85.    Plaintiff hereby incorporates by reference the allegations contained in all
proceeding paragraphs of this complaint.

86.    Plaintiff brings this claim individually and on behalf of members of the Class
against Defendants.

87.    Plaintiff and Class members conferred benefits on Defendants by purchasing the
Products.

88.    Defendants have knowledge of such benefits.

89.    Defendants have been unjustly enriched in retaining the revenues derived from
Plaintiff's and Class members' purchases of the Products.  Retention of moneys under these
circumstances is unjust and inequitable because Defendants misrepresented that Products were
"100% Recyclable."

90.    Because Defendants' retention of the non-gratuitous benefits conferred on it by
Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to
Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks
judgment against Defendants, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil

Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorney's fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated: October 18, 2021                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Andrew Obergfell*
          Andrew Obergfell

Andrew Obergfell (NJ Bar No. 157962015)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: aobergfell@bursor.com

**BURSOR & FISHER, P.A.**

Rachel L. Miller (*Pro hac vice* app. forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

Make Every Day a Recycling Day



# Recycling Guide



2016

The Warren County Recycling Program is pleased to provide you with this Guide to Warren County Recycling Programs. Use this Guide to determine how and where to dispose or recycle common household items. The rules of waste management are Reduce, Reuse, Recycle. Buying products with less packaging and using reusable shopping bags are just a few of the ways you can reduce waste. Always reuse items if possible. Remember that items that you no longer need can be donated to charitable organizations or given away to someone in need. If you find yourself with an item not listed within this Guide, contact your local recycling hauler or call the Warren County Recycling Program at 908-475-6533.

## WARREN COUNTY RECYLING CENTER/ CONVENIENCE CENTER

**Located at the District Landfill– 500 Mt. Pisgah Avenue, Oxford, NJ 07863 908-453-2174**
Monday thru Friday 7 am–2:30pm, Saturday 7am–11 am
Closed Sundays and most holidays
Visit **www.pcfawc.com** for more Information

### RECYCLING CENTER

| ITEM | EXAMPLES OF ACCEPTABLE ITEMS | HOW TO PREPARE |
|---|---|---|
| CARDBOARD | Corrugated cardboard, non-waxed cardboard boxes food and otherwise i.e. cereal, shoe and tissue. | Flatten boxes. Discard Styrofoam and other packing material in trash. |
| GLASS (containers only) | Bottles and jars of all colors | Rinse clean |
| METAL (containers only) | Beverage, food and EMPTY aerosol cans. | Rinse clean, may leave metal lids on |
| PAPER | Newspapers, including inserts, junk mail, magazines, phone books, copy and non-metallic wrapping paper. | Clean paper only. Remove newspapers/magazines from plastic bags and place bags in trash. Remove hard covers from books. |
| PLASTIC (containers only) | Bottles, jars and food containers | Rinse clean. Dispose lids in trash. |

### PLACE THESE ITEMS IN THE TRASH

Aerosol Cans containing product, Alkaline Batteries, Ceramics, China, Coat Hangers, Flower Pots, Food Trays, Garden Hoses, Glue Containers, Mirror Glass, Latex Paint (thoroughly dried out in cans), Mugs, Pictures, Pipe, Plastic Bags*, Plastic Pots, Porcelain, Pyrex, Rope, Shredded Paper, String, Styrofoam, Textiles, Tissue, Twine, Vases, Window Glass, used and soiled items.

* Plastic Bags – Look for plastic bag collection containers at your local stores or put them in the trash. Do not place plastic bags at curbside recycling (bags will cause malfunctions in recycling machinery)

### CONVENIENCE CENTER

- Pickup truck or car loads of debris (i.e. wood, shingles, carpeting, furniture, household trash, etc.) will be accepted at the Convenience Center.
- Items brought in this manner will be weighed and incur charges at the current disposal rate plus all applicable taxes.
- Payment for disposal must be in the form of cash, check, Visa, MasterCard, Discover or American Express ONLY.

SEE OTHER SIDE FOR MORE INFORMATION



**Household Hazardous Waste (HHW)**
**Bi-Annual Events**
At the Warren County District Landfill
visit **www.pcfawc.com** for the next scheduled event date

## ACCEPTED ITEMS:

Antifreeze, Asbestos (Pipe Wrap Only, NO shingles or siding, no longer than 3 feet in length, Double Bagged and Moist), Household Batteries - button cells, lithium, nickel cadmium, sealed leads (NO Alkaline Batteries), Cleaners, Corrosives, Driveway Sealer, Fire Extinguishers, Fluorescent Lights, Gasoline, Mercury, Oil/Alkyd Paints, Oxidizers, Pesticides, Propane Tanks (1lb or smaller), Solvents, (non-soluble), Transmission Fluid, Various Chemicals

## PAPER SHREDDING BI-ANNUAL EVENTS

**At the Warren County Administration Building, 165 County Road 519, Belvidere, NJ 07823**
visit **www.co.warren.nj.us** or call **908-475-6533** for the next scheduled event date.



Confidential/sensitive paper material only, such as medical records, billing statements, bank statements, mortgage statements, credit applications, lease applications, exhausted contracts, telephone statements, cable statements, any document that contains personal exclusive information

Preparation—please limit the quantity to 4 bags or boxes weighing no more than 20 lbs. each. Staff is available to unload documents.

No Businesses are accepted.

## TIRE RECYCLING PROGRAM

At The Warren County District Landfill
500 Mt. Pisgah Avenue, Oxford, NJ 07863
Visit **www.pcfawc.com** or call 908-453-2174 for details.



### Tires Accepted:                                    FEE (subject to change)

| | |
|---|---|
| Automobile/SUV tires without rims up to 22" | $2.50 |
| Commercial sizes without rims   22.5" to 24" | $5.00 |
| Farm Equipment tires without rims 24.5" to 50" | $10.00 |

Tires must be free from debris such as rocks, oil, dirt, ropes, chains or other matter or they will be rejected. Loads must be under 20 tires

## ELECTRONICS AND COMPUTER PARTS

Many electronic items including computers and televisions can be dropped off at the following locations. Please call the location to verify that the items are still being collected and if fees are charged.- Abilities Northwest NJ (908-689-1118), AERC (610-797-7608 or 610-433-4011) Best Buy. A collection event may be scheduled at the Pollution Control Financing Authority call 908-453-2174 or visit **www.pcfawc.com** for information.

SEE OTHER SIDE FOR MORE INFORMATION

**EXHIBIT B**

# Amid Crisis, Lawmakers Take Fresh Look At NJ's Recycling System

**TOM JOHNSON, ENERGY/ENVIRONMENT WRITER | AUGUST 16, 2019 | ENERGY & ENVIRONMENT**

Some environmental advocates say focus should be on reducing the amount of waste that's generated



recycling paper

The state Legislature on Thursday looked to examine ways to fix the state's recycling system, now in such a crisis that some communities pay more to recycle than to dispose of their garbage.

The collapse of the recycling market — not just here in New Jersey, but across the country — was triggered by the collapse of markets in China and elsewhere in Asia to accept recycled materials. The net result is the erosion of the entire sector, increasing costs to local governments and counties and straining already tight budgets.

Industry experts, officials, and environmentalists called on the state not to abandon three decades of recycling mandates but rather to take a new and comprehensive look at how to redevelop recycling markets and create new incentives to revive a sector that employs 27,000 people and adds nearly $6 billion to New Jersey's economy.

The hearing, before the Legislature's top environmental committees, is likely to lead to new bills to ban throw-away plastic bags, straws and polystyrene foam containers, a measure vetoed by Gov. Phil Murphy last year, and to recycle food waste, a bill currently on his desk.

## Plenty of recommendations

Case 3:21-cv-13904-ZNQ-DEA Document 22 Filed 10/18/21 Page 33 of 38 PageID: 517

Sen. Bob Smith (D-Middlesex), the chairman of the Senate Energy and Environment Committee, said he hopes to pass a stronger plastics ban in the lame-duck Legislature this fall. He also would like to see the improved food-waste bill, which he has sponsored, win passage this year.

"Part of the hearing was to find out how do we reinvigorate our recycling markets. We just don't have the end markets for recycled materials," Smith said, a perspective repeatedly voiced during the two-hour hearing in Toms River.

To that end, there were plenty of recommendations, primarily revolving around improving practices involving the collection of recyclables and eliminating — or at the very least, reducing — contamination of materials recycled at the curbs. Others suggested more uniform standards of what is recycled and how it is collected.

Others, like Debbie Mans, deputy commissioner of the state Department of Environmental Protection, said more data needs to be collected on where recycled materials end up and to identify key elements of developing recycling markets.

"Certainly, it is not time to panic," said Gary Sondermeyer, a vice president of a recycling company and former longtime recycling official at the DEP. New Jersey can once again revive its recycling efforts, he said, noting the state built up a nationally recognized recycling program 32 years ago. "We can do it again."

New Jersey recycles about 44 percent of the municipal waste collected at curbside, a number above the national average. Still, the collapse of overseas markets in recycled materials has forced towns to scramble to cover unanticipated costs to maintain recycling services to residents, experts said.

## Focus on reducing waste

Case 3:21-cv-13904-ZNQ-DEA    Document 22    Filed 10/18/21    Page 34 of 38 PageID: 518

It is going to take a lot of effort, however, according to those working on trying to meet recycling mandates in New Jersey today. New economic incentives may be needed to attract new end markets for recyclables, said Allen Weston, legislative director of the New Jersey Association of Counties.

In the meantime, some municipalities are paying more to recycle than to get rid of their garbage. Colts Neck pays $86 per ton to dispose of garbage, compared to $135 per ton for recyclables, according to Louis Bader, director of public works for the township.

"Why are we paying so much more per ton for recycling than for garbage," Bader said. "I just don't understand it."

But some environmentalists argued the focus should shift beyond recycling to reducing waste.

"Ninety-one percent of plastics never get recycled," said Amy Goldmith, state director of Clean Water Action. "We need to make less waste. By creating less waste and more recyclables, municipalities and taxpayers can also save hauling and disposable costs."

Dennis Hart, executive director of the Chemistry Council of New Jersey, cautioned against imposing new mandates on businesses, particularly in light of signs the economy is contracting. Additional costs to New Jersey businesses will be harmful, Hart said, discouraging investment by their parent companies.

**EXHIBIT C**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

ANDREW OBERGFELL
Tel: 646.837.7150
Fax: 212.989.9163
aobergfell@bursor.com

October 17, 2021

_Via E-Mail_

Niagara Bottling, LLC
1440 Bridgegate Dr.
Diamond Bar, CA 91765
c/o Dorsey & Whitney LLP

BlueTriton Brands, Inc.
900 Long Ridge Rd.
Stamford, CT 06902
c/o O'Melveny & Myers LLP

Re:     _Notice and Demand Letter Pursuant to U.C.C. § 2-607_

To Whom It May Concern,

　　This letter serves as a preliminary notice and demand for corrective action by Niagara Bottling, LLC ("Niagara") and BlueTriton Brands, Inc. ("BlueTriton") (collectively "Defendants" or "You") arising from breaches of warranty on behalf of our client, Sharon Haggerty, and a class of all similarly situated purchasers of Niagara and BlueTriton bottled water. This letter serves as notice pursuant to U.C.C. § 2-607(3)(a) concerning the breach of express warranty described herein.

　　Niagara has participated in the manufacture, marketing, and sale of Bottled Water under several brand names, including Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials. BlueTriton has also participated in the manufacture, marketing, and sale of Bottled Water under several brand names, including Arrowhead, Poland Spring, Ozarka, and Deer Park (Niagara's and BlueTriton's Bottled Water products are collectively referred to as the "Products"). The Products are marketed and sold as "100% recyclable," when they are not. A recent survey[1] by Greenpeace USA, a non-profit environmental organization found that domestic manufacturing recycling facilities ("MRF"s") only have the capacity to process into plastic resin approximately 22.5% of the total post-consumer polyethylene terephthalate ("PET") plastic waste generated, and only 12% of the total post-consumer high-density polyethylene ("HDPE") plastic waste generated in the United States. Moreover, due to contamination and processing losses, about a third of the collected PET and HDPE material processed by MRFs cannot be

---

[1] Greenpeace, _Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability_, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 22, 2021), at page 10.

converted into "clean flake" material, and is instead, landfilled and incinerated.[2]  Finally, the Product's labels, made of biaxially oriented polypropylene ("BOPP") and bottle caps, made of polypropylene ("PP"), are widely considered to be among the least recyclable plastics.[3] Accordingly, Defendant breached an express warranty appearing on the labeling of the Products because the bottles are not, in fact, "100% Recyclable."

Ms. Haggerty purchased and used Deer Park and Niagara bottled water in reliance on BlueTriton and Niagara's express warranty stating that the Products were "100% Recyclable." And Defendants breached these express warranties for the reasons stated herein.  *See* U.C.C. § 2-313.

Ms. Haggerty is acting on behalf of a class defined as all persons in the state of New Jersey who purchased the Products.

To cure these defects, we demand that You (1) cease and desist from further sales of the mislabeled Products; (2) issue an immediate recall of the mislabeled Products; and (3) make full restitution to all purchasers of the Products.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning labeling of the Products;

2. All documents concerning the advertisement, marketing, or sale of the Products;

3. All documents concerning communications with any retailer involved in the marketing or sale of the Products;

4. All documents concerning communications with purchasers of the Products;

5. All documents concerning communications with federal or state regulators; and

6. All documents concerning the total revenue derived from sales of the Products in the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

---

[2] Jan Dell, Plastic Pollution Coalition, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*, https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (Last accessed July 22, 2021).
[3] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 22, 2021), at page 22.

BURSOR&FISHER
P.A.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me right away. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Andrew J. Obergfell*

Andrew Obergfell