<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHARON HAGGERTY,** *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **BLUETRITON BRANDS, INC.,** *et. al.*, <br><br> Defendants. | Civil Action No. 21-13904 (ZNQ) (DEA) <br><br> **OPINION** |

<u>QURAISHI, District Judge</u>

**THIS MATTER** comes before the Court upon two Motions to Dismiss the Amended Complaint ("the Motions") filed by Defendant Bluetriton Brands, Inc., ("Defendant Bluetriton") and Defendant Niagara Bottling LLC ("Defendant Niagara") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF Nos. 24, 27, respectively.) Defendant Bluetriton filed a Memorandum of Law in Support of its motion. ("Bluetriton Moving Br.", ECF No. 24-1.) Defendant Niagara filed a Memorandum in support of its Motion. ("Niagara Moving Br.", ECF No. 27-1.) Plaintiff Sharon Haggerty ("Plaintiff") filed briefs in opposition to Defendant Bluetriton's Motion ("Opp'n to Bluetriton Br.", ECF No. 25) and in opposition to Defendant Niagara's Motion ("Opp'n to Niagara Br.", ECF No. 26). Both Defendants filed replies. ("Bluetriton Reply", ECF No. 29; "Niagara Reply", ECF No. 28.) The Court has carefully considered the parties' submissions and decides

the Motions without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil

Rule 78.1.  For the reasons set forth below, the Court will GRANT the Motions.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed her first complaint against Defendants on July 20, 2021.  (ECF No. 1.)

Defendants both filed motions to dismiss the complaint on October 1, 2021.  (ECF Nos. 18, 19.)

Counsel for all parties filed a proposed stipulation to extend time to oppose both motions to

dismiss.  (ECF No. 20.)  The Court, however, denied the stipulation.  (ECF No. 21.)

After a telephone conference with the Court, Plaintiff filed an Amended Complaint ("Am.

Compl.") on October 18, 2021.  (ECF No. 22.)  Parties were then ordered to serve the Motions to

Dismiss and respective briefs upon each other before filing them on the docket.  (*See* ECF No. 23.)

## II.    FACTUAL BACKGROUND[2]

Defendants manufacture, market, sell, and distribute bottled water products (the

"Products").  (Am. Compl. ¶ 1.)  The Products at issue contain the representation "100%

Recyclable" on its packaging and labeling.  (*Id*.)

Plaintiff has purchased numerous multi-bottle packs of Defendant Bluetriton's "Deer Park"

bottled water and Defendant Niagara's "Niagara" bottled water for approximately $5 and $4,

respectively.  (*Id*. ¶ 16.)  When purchasing the Products, Plaintiff reviewed the accompanying

labels and disclosures and understood them as representations and warranties by Defendants that

the Products were 100% recyclable.  (*Id*.)  Plaintiff attempted to recycle the Products by placing

them in her recycling bin for pickup.  (*Id*.)  However, the Products were not actually recycled

because the bottle cap was not recyclable in her county.  (*Id*.)  Plaintiff also alleges that "given

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.
[2] For purposes of the Motions, the Court takes all facts alleged in the Amended Complaint as true.  *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

statewide statistics, less than half of the bottles [she] recycled would have actually been recycled into usable material."  (*Id*.)

Each of the Products manufactured by Defendants has three components: the bottle, the cap, and the label wrapped around the bottle.  (*Id*. ¶ 28.)  The bottles are made of polyethylene terephthalate ("PET"), the plastic most commonly used in single-use plastic water bottles.  (*Id*.)  The Products' bottle caps are made of polypropylene ("PP") or high-density polyethylene ("HDPE").  The Products' labels are made from biaxially oriented polypropylene ("BOPP"), a form of PP.  (*Id*.)

Throughout the class period, Defendants have consistently marked on the Products' packaged that they are 100% recyclable.  (*Id*. ¶ 29.)  Plaintiff claims that Greenpeace USA, a non-profit environmental organization, recently conducted a comprehensive survey of plastic product waste recycling and reprocessing in the United States.  (*Id*. ¶ 20.)  The survey found that "as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated."  (*Id*. ¶ 31.)  Further, Plaintiff alleges that about one-third of the collected PET and HDPE material processed by MRFs cannot be converted into "clean flake," and instead are landfilled and incinerated.  (*Id*. ¶ 32.)  Furthermore, PP and BOPP plastics, the materials used to make the Products' bottle caps and film labels, are among the least recyclable plastics.  (*Id*. ¶ 33.)  Accordingly, Plaintiff asserts the Products are in fact not 100% recyclable as advertised.  (*Id*. ¶ 42.)

The Amended Complaint includes allegations that Defendant violated the Consumer Fraud Act ("CFA"), contrary to N.J.S.A. § 56:8-1 (Count I), fraud (Count II), negligent misrepresentation (Count III), breach of express warranty (Count IV), and unjust enrichment (Count V).

3

Defendants move to dismiss the Amended Complaint on several grounds, including that Plaintiff lacks Article III standing to bring the present action, and fails to state a claim on which relief can be granted.

### III.   LEGAL STANDARD

#### A.   Rule 12(b)(1)

Standing under Article III of the United States Constitution is an element of subject matter jurisdiction.  *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016).  Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("*Schering Plough*").  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual.  *Schering Plough Corp. Intron/Temodar Class Action,* 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("*Aichele*").  When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Although the plaintiff bringing an action in federal court bears the burden of establishing jurisdiction, upon reviewing a facial attack, a "court must consider the allegations of the complaint as true."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Aichele*, 757 F.3d at 358.

## IV.    **DISCUSSION**

There are three well-recognized elements of Article III standing.  Only one is disputed by Defendants in this case:[3] "injury in fact" or "invasion of a legally protected interest" that is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, the Motions argue that, accepting the Amended Complaint on its face, Plaintiff fails to allege an injury in fact.  This is a facial attack on her standing.  Thus, the Court will take the facts in the Amended Complaint as true and construe them in the light most favorable to Plaintiff.

In the context of a motion to dismiss, the injury-in-fact element is "not Mount Everest." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).  The contours of the injury-in-fact requirement require only that the claimant allege some specific, "identifiable trifle of injury."  *Id*.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.  *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted).  To plead an injury in fact, the party invoking federal jurisdiction must establish three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both "concrete and particularized"; and third, that the injury is "actual or imminent, not conjectural or

---

[3] Defendants raise no challenge to the "causal connection between the injury and the conduct complained of" or "that the injury will be redressed by a favorable decision."  The Court does not reach an independent assessment of these elements because it concludes, *infra*, that the Amended Complaint does not satisfy the injury-in-fact element.

hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan,* 504 U.S. at 560); *see also Mielo v. Steak 'n Shake Ops*., 897 F.3d 467, 479 n.11 (3d Cir. 2018).

The requirements for standing do not change in the class action context*. In re Franklin Mut. Funds Fee Litig*., 388 F. Supp. 2d. 451, 461 (D.N.J. 2005). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation and internal quotation marks omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, Plaintiff is the party seeking to invoke federal jurisdiction, so "[t]he burden to establish standing" rests with her. *Finkelman*, 810 F.3d at 194. Indeed, she specifically "bears the burden of showing that [s]he has standing for *each* type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added).

### 1. Monetary Damages

A plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing. *Finkelman v. National Football League*, 810 F.3d 187 (3d Cir. 2016); *Cottrell v. Alcon Laboratories*, 874 F.3d 154 (3d Cir. 2017). She "must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. and Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018) ("*In re Johnson & Johnson*"). Accordingly, here, Plaintiff must do more than simply characterize her purchases as economic injuries. She must allege facts

that would permit a factfinder to determine that the economic benefit she received in purchasing the bottled water was worth less than the economic benefit for which she bargained. *Id*. at 290.

Plaintiff alleges that she has suffered an injury in fact because the 100% recyclable labelling induced her to pay a premium price for the Products. (*See, e.g.,* Am. Compl. ¶ 16) (Plaintiff "paid a premium price for the Products quantified as the difference in value between the Products as represented versus the value of the Products received (the value of the Products received was less than the value of the Products were, in fact, 100% recyclable."); (*see also* Opp'n to Niagara Br. at 7). For the reasons set forth below, this is insufficient.

Traditionally, a "'premium price' theory of injury is premised on a plaintiff alleging that the defendant unlawfully advertised the contested product as being superior to others, which allows the court to calculate the financial injury by determining the 'premium' that a plaintiff was induced to pay by unlawful advertisements." *In re Plum Baby Food Litigation*, Civ. No. 21-2417, 2022 WL 16552786, at *8 (D.N.J. Oct. 31, 2022) ("*Plum Baby Food*") (citing *In re Johnson & Johnson*, 903 F.3d at 283). "Threadbare allegations that, had a plaintiff known about an alleged deficiency in a product, [she] would not have paid that price for said product, without more, [are] insufficient to find an injury-in-fact." *Id*. (citing *Estrada*, 2017 WL 2999026, at *15 ); *see also Kimca v. Sprout Foods, Inc*., Civ. No. 21-12977, 2022 WL 1213488, at * 8 (D.N.J. April 25, 2022). Courts in this District have rejected mere "but-for" assertions as insufficient to plead an injury under a premium price economic injury theory. *See Plum Baby Food*, 2022 WL 16552786, at *8–9.

Here, as in *Plum Baby Food*, the Amended Complaint fails to put forth any facts regarding comparable or cheaper products to show Plaintiff paid a premium price.[4] Plaintiff's theory of

---

[4] The Amended Complaint also fails to explicitly assert that the Products are superior to comparable water bottles that are not 100% recyclable, but the Court finds that this can be readily inferred based on a fair reading of the Amended Complaint.

harm fails to particularize a concrete injury.  *See Spokeo, Inc.*, 578 U.S. at 339.  She merely claims that but for the Products' representations that they were "100% Recyclable," she would not have purchased the Products at their premium price.  (*See* Am. Compl. ¶¶ 14, 16, 59.).  Rather than pleading facts regarding comparable, cheaper products, she proposes her injury be measured as "the difference in value between the Products as represented versus the value of the Products received."  (*Id.* at ¶¶ 16, 60.)  This assertion, however, is merely restating Plaintiff's burden to articulate how that value is to be determined.  Accordingly, the Court finds that Plaintiff has failed to plausibly plead an economic injury in fact under the price premium theory, and therefore she lacks standing to seek monetary damages.[5]

2.   *Injunctive Relief*

Defendants separately challenge Plaintiff standing to see injunctive relief.  (Am. Compl. ¶ 16) ("Plaintiff will be unable to rely on Defendants' "100% Recyclable" claim in the future unless appropriate injunctive relief is entered.")  Defendant Bluetriton asserts that Plaintiff lacks standing because she already believes Defendants' claims are misleading and she will therefore not be misled by those claims again.  (Bluetriton Moving Br. at 29.)  Similarly, Defendant Niagara asserts that Plaintiff cannot claim she will continue to be misled when her Complaint demonstrates that she is fully familiar with the alleged shortcomings of the Products' "100% recyclable" representation.  (Niagara Moving Br. at 14.)

In opposition, Plaintiff claims she in fact has standing because of her desire to purchase water bottles from Defendants in the future.  (Opp'n to Niagara Br. at 14.)  Plaintiff asserts that

---

[5]To the extent that Plaintiff may also be attempting to plead a benefit of the bargain theory of economic harm, in at least one case, the Third Circuit has rejected that theory in this context.  *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

the Amended Complaint alleges a future exposure to an increased risk of harm.   (Opp'n to Bluetriton Br. at 31.)

In reply, Defendant Niagara asserts that Plaintiff cannot as a matter of law satisfy the requirement that she is likely to suffer future injury from Defendant's conduct.   (Niagara Reply Br. at 3.)  Similarly, Defendant Bluetriton asserts that under controlling Third Circuit law, Plaintiff lacks standing to seek injunctive relief.   (Bluetriton Reply Br. at 11.)

Generally speaking, in order to have standing to seek injunctive relief, a plaintiff must establish that she is '''likely to suffer future injury' from the defendant's conduct.''  *McNair v. Synapse Group Inc*., 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 (1983)).  The threat of injury must be "sufficiently real and immediate," *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir.1990) (citation and internal quotation marks omitted), and, as a result of the immediacy requirement, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," *O'Shea*, 414 U.S. at 495–96; *see Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact'. . . ."; *Lyons*, 461 U.S. at 105 ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury....").

Plaintiff may seek to purchase Defendants' Products in the future, but  "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair*, 672 F.3d at 225 (citing *Atlantic Gypsum Co., Inc. v. Lloyds Int'l Corp*., 753 F. Supp. 505, 514 (S.D.N.Y. 1990)).  Whether Plaintiff purchases the Products or not will be her choice, and what that choice may be is a matter of pure speculation.  *See McNair*, 672 F.3d at 225. Even if Plaintiff would purchase the Products again were the products properly labeled or repackaged, and

even if Plaintiff's inability to trust Defendants' labeling in the future prevents her from purchasing the Products against her wishes, such claims "lack the necessary imminency and do not result in a substantial risk of harm sufficient to generate an independent injury." *See Plum Baby Food*, 2022 WL 16552786, at *10 (citing *Pierre v. Healthy Bev., LLC*, Civ. No. 20-4934, 2022 WL 596097, at *6 (E.D. Pa. Feb. 28, 2022) and *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2210–11 (2021)).

Accordingly, the Court concludes that the Amended Complaint fails to articulate an injury sufficient to confer upon Plaintiff standing to seek injunctive relief.

## V.   **CONCLUSION**

For the reasons stated above, the Court will GRANT Defendants' Motion to Dismiss.  The Amended Complaint will be DISMISSED WITHOUT PREJUDICE.  The Court will grant Plaintiff leave to file a Second Amended Complaint within 30 days.

Date: **December 16, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**